Oyez, oyez, oyez. All persons having any manner or form of business before the Honorable, the United States Court of Appeals for the Fourth Circuit, are admonished to draw nigh and give their attention, for the Court is now sitting. God save the United States and this Honorable Court. Thank you and please be seated. A little argument in our first case.  Thank you, Your Honor. May it please the Court. Erica Hashimoto from the Georgetown Law Appellate Litigation Clinic. With the Court's permission, third-year clinical student, Laura Schreiner, will be presenting argument on behalf of Mr. Freeman. Alright, thank you. We'll be glad to hear from you. Thank you, Your Honor. And may it please the Court. The video evidence speaks for itself, and a reasonable jury can infer malicious, retaliatory intent. Officer Deas pursued Mr. Freeman into the holding cubicle and began throwing a flurry of punches in retaliation for an attempted headbutt. He only stopped when other officers stepped in to protect Mr. Freeman from him. And that's not all. As he was being pulled away from Mr. Freeman, Officer Deas attempted to rush back and attack Mr. Freeman a second time to finish the job. He bulldozed through several other officers before he was luckily stopped. So Mr. Deas says that he struck or attempted to strike Mr. Freeman with an open hand. Mr. Freeman says he was hitting with a close punch. And I've watched the video several times and I can't tell what happened. So, on summary judgment, what are we to draw from that? I think, Your Honor, either the close fist punches or the open palm strikes all give rise to an inference of malice because punches look a lot more like retaliation than some of the other type of restraining that Officer Deas may have used, but that's not what happened here. So he says, the defendant says, that that's their standard technique to bring an inmate under control, is to use the open hand in order to subdue them. Are you saying that use of force in that way is always an issue of malicious intent? No, Your Honor, it's an issue of malicious intent only because at this time, any threat that Mr. Freeman may have posed at the moment of headbutt had dissipated because Mr. Freeman stepped back and created distance between himself and Officer Deas and it was Officer Deas who pursued him into the holding cubicle and punched him into a corner. And that is inapposite to both the amount of threat that has, first of all, dissipated and also it does not achieve the objective that Officer Deas stated, which was to lead him away from that holding cubicle and back into his cell. So the use of force with the open hand is not permissible in order to extract the inmate? It's not impermissible, Your Honor, but in this case it does not achieve the objective that Officer Deas had said, so Officer Deas' own explanation doesn't hold water. And I think in other circumstances it may well be acceptable. Well, are you asking us to draw a line based on whether he was, Officer Deas was successful? You know, you seem to be saying he didn't accomplish the purpose. He claims he was trying to regain control so that he could get Freeman to comply with his command to come out. He wasn't successful, right? He went in for the strike and then there was scuffling that we can't tell who's doing what. But it sounds like you're saying because he wasn't successful that we should draw an inference from that? No, Your Honor, I think the inquiry is not whether he was successful, but it was whether his use of force was clearly for the objective that he had stated. And in this case, not only is that force inapposite, it's also disproportional to the minor noncompliance that Mr. Freeman had. This court had held in Brooks and in, I believe, in Brooks that minor noncompliance like that does not allow the officer to take the gloves off. Right, but we have cases like there's Grayson v. Peed where the inmate wasn't being violent. They were just not complying with an order to get out of a cell and we said it wasn't excessive to go in with five officers, subdue the person, which involves some punches, and move them from one room to another. I mean, here you admit Mr. Freeman was being violent, right? I'm not familiar with that case. My apologies, Your Honor. Sure. Let me ask you about Brooks. In Brooks, the inmate refused to hold still for a picture and that's when the officer tased him three times, including one time when Brooks was lying on the ground. Isn't that distinguishable from this case? I think, what exactly do you mean, Your Honor? Brooks as Mr. Freeman here. I think in all the important ways, this case is exactly like Brooks. In Brooks, as is in here, the officer attempted to use force repeatedly. And in Brooks, this court had said that once that second attempt to use force comes in, that changes the whole picture. And so to here, when Officer Deese attempted to rush back and attack Mr. Freeman a second time, that shows that his intent in the first, at least a reasonable jury can conclude that that shows that his intent for the first attack was also malicious. And the video alone allows for several other key inferences, one of which is other officers' reaction to this attempted, to this attack. Let's, just before you get into that, let's go back for just a second. So, Freeman attempts to headbutt Officer Deese, moves back into the cubicle after he misses. What force was Deese or any of the other officers permitted to use, in your view, to remove him from the cubicle to take him where he was supposed to be? Your Honor, I think the other officers' reaction to what happened is illustrative. Every other officers decided to de-escalate the situation. Right, I understand that. That doesn't really get an answer to the question. The question is, what amount of force were the officers permitted to use to remove him from the cubicle? Not the type of hands-on force that Officer Deese had used. Still not answering the question. What force were they permitted to use? I think in this case, there would have been no amount of force that is allowed for the minor in non-compliance because every other officers had... So, he's going to stay in the cubicle indefinitely if he refuses to come out? I think after the de-escalation, there would have been opportunities for the officers to apply, for example, the soft touch that the prison policy asked for. But doesn't the officer try to use the soft touch? When he tries to, and then he tries to headbutt him? Yes, initially, but then after the soft touch, Officer Deese did use force, use a flurry of punches, and that crossed the line. And to confirm what the video had showed, we also have what happened before the attack. Officer Deese had been taunting and belittling our client before any of the justification for force that he proffered even arised. How do we know that? I'm sorry? How do we know that? Officer, Mr. Freeman had stated this in his complaint, in his witness statement, and the state had cited it in their appendix for motion to summary judgment, and the district court also take as true. I'm sorry, and the district court did what? The district court mentioned this in their discussion of facts. And this taunting and belittling also can show to the jury that none of Officer Deese's justification for the use of force hold water. But didn't the district court, and the district court said even taking everything that's disputable and the light most favorable to Mr. Freeman, we can see from the video a different officer giving this hand motion. So we know that he was commanded to come out, and he refused to come out. That's correct, Your Honor. Okay. But before any of the justification for the use of force arised, Officer Deese was taunting and belittling our client. And that shows to a jury that at least some of these, some of Officer Deese's account of the events, Officer Deese was holding animosity towards Mr. Freeman before the noncompliance and the attempted headbutt. And so... So let's go, I keep coming back to this because I'm not sure you really answered the question. So, Freeman is in the cubicle, he won't come out. Are they permitted to pepper spray him at that time to make him compliant to get him out? I think that's right, Your Honor. The prison use of force guide also mentioned pepper spray as an appropriate way to get compliance, and that's what happened in IKO v. Shreve as well. But I believe that Officer Deese said that the pepper spray was not appropriate because there was another inmate in the next cell. That is correct, Your Honor. But between pepper spray and the flurry of punches, I think there are a lot of steps that Officer Deese may have taken, one of which is de-escalation. Again, this just gets back to Judge Agee's original question, but what are the steps? We have many opinions saying we're not prison administrators, we're not trying to second-guess a split-second decision about how to handle a situation, but if we were going to do that, what should the officer have done? He can't use pepper spray because they're in mesh cells and there's someone next door to him, right? And then we would get a lawsuit from that gentleman saying I was pepper sprayed for no reason. So he can't use pepper spray. What could he do after the headbutt to try to get control of Mr. Freeman and get compliance, in your view? If Officer Deese had used some sort of force right at the moment of headbutt, or if he had been using some sort of restraining maneuver, that would, I think, to a jury, look a lot more like a reasonable use of force. It would comport a lot better with Officer Deese's explanation. I don't think he knew the headbutt was coming. I'm sorry? I don't think he knew the headbutt was coming, so all he could do was get out of the way. I don't think he was able to pre-plan some defensive maneuver at that point. Your Honor, apologies. I meant at the moment of the headbutt, as in before Mr. Freeman had retreated. And I think that de-escalation matters a lot here because, as this court said in Dean v. Jones, once a threat has dissipated, that threat cannot serve as justification for any use of force. So you're saying the threat dissipated because it was, what, a second? Maybe a second and a half? Mr. Freeman went for the headbutt and then backed away, right, as you do when you're trying to be defensive. You're saying in that second or second and a half, the threat had dissipated. The officer, the only constitutional choice was to back away and not use force. Officer Deese could have not pursued Mr. Freeman into the holding cubicle because of that distance. I think the way that he made that active choice makes this constitutionally significant. And this court had said in Dean's that even if that threat had been present just seconds before, once that threat dissipated, and I think a jury can look at the video and say that the threat had dissipated because of that distance, then no amount of force is justified. I think certainly by the time he had, Officer Deese had walked down the hall, right, the second potential scenario, right, the threat had dissipated at that point, right? A different officer has Mr. Freeman under control, although he's still refusing to let you sell. And then he rushes, Officer Deese rushes back down the hall. If something had happened at that point, right, we could say maybe there was distance, there was dissipation, but nothing did happen at that point. Other officers turned him around and he went away. There's a distance there that we don't have in the first scenario. There is a distance that we don't have in the first scenario, but I think a reasonable jury could disagree on whether that threat had indeed dissipated. I think a reasonable jury could reach a conclusion that had Officer Deese not pursued Mr. Freeman into the holding cubicle, no subsequent conflict would have arised. And as to the second scenario, just because Officer Deese had other officers there to hold him back, just because Mr. Freeman was lucky doesn't change the analysis of Mr. Freeman's intent. Sorry, Officer Deese's intent. Well, it's relevant in the fourth prong of the, it's not a prong, but the fourth consideration for the Whitley factors, right, that the force was mitigated, right, even if it was not Deese who mitigated it, right, he's either defending himself or being the aggressor, we don't know, but other officers are there and get him out of the cell and that mitigates the force, right? I think the mitigation factor should come from mitigation by the use of force person himself, not the surrounding officers, because Whitley speaks to the proportionality, and from the proportionality then we can infer intent, but just because other officers were there doesn't mean that Officer Deese's own intent had changed, and so I think other officers' reaction to... Yeah, but that goes to, I mean, the fourth Whitley discussion, the part of that discussion is going towards the amount of force, right, it's not about, well, the officer intended to really hurt this guy and use a lot of force, but he was unsuccessful, right? The question for the fourth part of the analysis is, it goes to whether the force was in fact excessive, right, not the intended force. I see my time has expired, may I answer your question? Go right ahead. Thank you. Yes, the Whitley does offer objective benchmarks for the intent, but I think the court shouldn't lose sight of the ultimate inquiry, and I think the fact that other officers were present and leading to a lower amount of force, at the end of the day doesn't speak as strongly to Officer Deese's intent as his own actions. Thank you. All right, thank you. Here's why you're listening to opposing counsel and preparing for a bottle. This is what I see as the difficulty in your case to a large part, which I don't know quite how to resolve. Even if the force had dissipated, the emergency had dissipated in terms of reaction to the headbutt, you still have, in a different way from other cases where maybe the inmate or arrestee has been subdued, you have a separate problem. They still have to extract this person from the cell, and so I'm not sure we can draw a definitive line that says force stops because the threat of physical danger has passed, but yet at the same moment, we've still got to move an inmate who won't obey lawful orders. So to me, that's sort of the crux of this case. But thank you, Ms. Schreiner. Ms. Taylor, we'll hear from you. Thank you, Your Honors. May it please the court. My name is Lisa Taylor from the North Carolina Department of Justice, and I represent the defendant appellee, Officer Daniel Dees, in this matter. Your Honors, Officer Dees respectfully asks that this court affirm the district court's ruling granting summary judgment in his favor for the following three reasons. First, there is no direct or circumstantial evidence of record that is material to the inquiry of whether Officer Dees acted with malicious intent on November 30, 2017. Second, the district court properly applied the Whitley factors in finding that no reasonable jury could infer such malicious intent on that day. Let me ask you this. So can we look at the second incident of Officer Dees trying to, once he's separated by the other officers and then he attempts to come back, can we look at that in our consideration of intent? Your Honor, respectfully, no. I have not seen any authority that would support the contention that an officer's actions after a use of force event has concluded can somehow inform what his subjective intent was when he actually used force. We have sort of a narrow window that we're looking at, the moments directly before and during a use of force event. So had, like Your Honors had posed previously, had Officer Dees, in fact, returned to this plaintiff and somehow used force against him a second time, it would be our contention that at that point those subsequent actions would be relevant to what his subjective intent was at that time. So are you saying that if you had a situation where the correctional officer hit the inmate and then two or three seconds later he says, I don't like you and that's why I just hit you, the fact that he said that after he hit the inmate is not admissible? It's not relevant proof? I understand respectfully. In that situation, that seems like a party admission to the relevant requirements for a plaintiff to show a constitutional violation. So in that situation, I would contend that if an officer essentially admits to what their subjective intent was in the way that you just framed, that that would be evidence of what his intent was because we can't read the officer's mind, of course, so this is kind of an imperfect. Well, let's suppose that the officer doesn't say that but there's a third party witness who says that's what he said. Respectfully, I would say that in that situation, that would be an admissible hearsay. I think the way that you posed the first question, that would be essential to a party admission of what his intent was. The best evidence I suppose we could have in a situation like this of what the officer was thinking when he did that thing, even if he made those comments after the fact. But here we have a situation where... where the inmate was pepper-sprayed and the court considered an intent. I believe they pepper-sprayed the inmate and left him in the clothes and did not seek medical treatment. In that case, this court considered that for purposes of intent as the officers. How is that different than this case? In that case, I would contend that the lack of getting medical treatment to decontaminate the plaintiff at that point would be its own harm. It's sort of a continuing harm in that situation. Whereas here, in essence, the use of force kind of continues from when they initially pepper-sprayed him to kind of leaving him in that condition. In that state, he's still probably suffering and having those effects from the pepper-spray at that point. That's distinguishable from what we have here, which is kind of an upwards of 8-second skirmish in a holding cubicle and then the officer's actions after the fact. He's not continuing to harm the plaintiff like it was the case in the IKO case. Your Honor, the plaintiff also contends that the officer's comments beforehand are somehow material to the subjective analysis of what his objective intent was when he later utilizes force. That's one of their points on the summary judgment here is inappropriate because perhaps the district court did not weigh that fact sufficiently in favor of the plaintiff. And, Your Honors, we contend that that contention of disputed fact is not material to our analysis here. The comments, if you take as true what the plaintiff contends both in his witness statement and then also in his pleadings and also at summary judgment and then again here on appeal, that Officer Deese is making comments to him while he's still outside of the cell. We don't specifically know what he's saying. There's never been any contention of a particular name being called, a particular phrase being stated to him. We simply just know that he claims he was being taunted and called belittled and disrespectful things. It's subsequent to those comments that the officer enters the cell. He uses soft touch, de minimis force, to try and gain compliance with this inmate. He uses another soft touch by trying to grab his restraints to gain compliance to try and have him exit this holding cubicle as he had been verbally commanded to do previously. And then once those two forms of touch fail, Officer Deese is seen retreating out of the cell. And it's at that point, of course, that the plaintiff sort of escalates the situation from one of noncompliance to one of violence by attempting to assault Officer Deese. So the plaintiff has sort of relied on the plaintiff's own contention that these comments that were made, again, we don't know specifically what he said, but that these comments somehow can inform ultimately what his subjective intent was when he uses force. And that argument misses a whole host of de minimis mitigating actions that Officer Deese takes. Two forms of de minimis touch and then a retreat out of the holding cubicle. So it's our contention that those comments would be much more material to the analysis if, for example, Officer Deese's first action was to enter the cell and throw punches. But that's not the case, and we know that plainly because we have a video of it, fortunately. So, Your Honors, we contend that that contention of disputed fact is not material here, such that it should overcome the district court's ruling on summary judgment. And I will also note the plaintiff relies exclusively, predominantly, on the Dean versus Jones case for this contention that an officer yelling, you done effed up, of course censoring myself, directly before and while multiple officers were beating an inmate in a janitor's closet outside of the security view is somehow relevant here to showing that the officer's comments, as they've been described previous, somehow are material to the subjective intent when he utilizes force. And, of course, that case is quite dissimilar from this case for a multitude of reasons, the most important being that we have a video here. We don't have two sets of contrasting factual accounts like this court grappled with in Dean. And in that situation, of course, the comment, you done effed up, can be objectively read and a plain meeting can be applied to it to understand what a jury can read into that, the actual meeting. So we don't have deposition testimony from the other officers. Is that correct? That's correct. We have their affidavits. Affidavits don't really say a lot. Did Mr. Freeman, did he have counsel in this to do discovery before the summary judgment motion? My understanding, Your Honor, is that he was pro se at the trial level. I thought the district court, correct me, you obviously know your case better than I do, but I thought the district court assigned him counsel for discovery. You're absolutely right. I apologize. Yes, he was assigned, I believe, prisoner of legal services for purposes of discovery in this case. Yes, thank you. So depositions from them would have been very helpful, I think, here. But let me ask you about if it was clear from the video that Officer Dease was hitting Mr. Freeman with a closed fist several times, how would that change this case? Your Honor, hypothetically, I'm not sure how many punches your question poses. I don't know the amount of time that it would span. But frankly, I'm not sure that it would change this case much, given the Whitley factors that we have here, as well as this court's finding in Brooks that an officer may employ force in good faith when they're faced with an immediate threat to their physical safety or a threat to prison order. It might be important here because, as I understand it, Mr. Dease says that he struck with an open hand, and that's how they were instructed to do it. But if the video clearly showed that was not true, would that be an escalation in force that would not be permissible? Your Honor, respectfully, no. I don't believe that it would be a constitutional violation in this situation. It may be a break from policy and procedure. It may be a point to be trained better on. But under this court's and the Supreme Court's rulings with respect to excessive force and applying the Whitley factors, I'm not aware that a closed fist is impermissible in a situation like this, where an inmate has posed a significant threat to officer safety and has remained noncompliant multiple times. But, Your Honor, I do think that it's helpful, frankly, that Officer Dease contends, and we have no reason to disbelieve what he says. It's on the video that he is not throwing closed-fisted punches at him over a long course of time. Well, he had, Freeman had retreated into the cubicle before Dease struck or attempted to strike him. So, in view of the fact that there was no need to use force at that point to defend himself, was he permitted to strike Freeman with a closed fist in order to remove him from the cubicle? Your Honor, respectfully, I believe so. I believe so. In order to gain compliance, I will remind the court this is no more than an 8-second encounter. This is very dissimilar to the other cases, sort of the seminal cases on this point, where multiple officers are holding an inmate down and beating them outside of security view, for example. This is an 8-second encounter with an inmate who has remained noncompliant. It's clear in the video that he is aggressively jerking away from Officer Dease's use of de minimis touch, that he attempts to assault Officer Dease by stepping toward him after Officer Dease has retreated out of the cell and attempted to headbutt him in the face. So, Your Honor, respectfully, if Officer Dease had utilized closed-fisted punches, given the short span of time, I would contend that that would be permissible under our case law, and it would not be considered a constitutional violation. Don't we have to assume that he did, given the dispute of fact here? I mean, we have the video, but it doesn't, no matter how much you slow it down or pause it, it doesn't show open hand or closed hand or exactly how many, right? You can infer something from the way their bodies are moving, but we can't say definitively. So we have to take those facts as the plaintiff has pled them. Yes, Your Honor, absolutely. And so even taking as true the plaintiff's contention that he was struck by a flurry of closed-fisted punches, I don't believe that that is confirmed on the video. Just because the video maybe is a little blurry sometimes, I'm not sure that you can confirm a flurry of closed-fisted punches to his face and neck. I feel confident in saying that that is not confirmed. But could a jury infer that from other evidence? I'm so sorry, can you repeat that? Could a jury infer that they were closed-fist punches from the other evidence? The taunting, the trying to get back into the cell and that sort of thing. Your Honor, the taunting specifically would be much more material to what kind of force Officer Deese used in this situation if that was his first response. If right after he allegedly was taunting the plaintiff, he immediately came in and used the type of force that we have here immediately and didn't employ the de minimis force that he attempted, nor the retreat out of the cell. In that situation, the comment specifically would be much more material to kind of figuring that out. Would the medical report compel a jury to conclude one way or the other about a flurry of closed-fisted punches to the head and face? Or can we not make that call ourselves at this stage? I thought the medical report said there were no injuries, there were nothing of note, but how much can we do with that when we're not the fact finder? Your Honor, the plaintiff has not forecasted any evidence that would be provided at trial showing that he was in fact injured as a result of these closed-fisted flurry of punches that he contends he took to the face and neck. So where the plaintiff has not met his burden of forecasting evidence that would show that, and instead we have evidence from our medical provider at the facility that confirmed no injury was sustained, and we also have the plaintiff himself who admitted at the summary judgment stage that he sustained no injury as a result of this encounter, then I think that would be sufficient here just on the record that we have now without a trial of showing that in fact the plaintiff did not sustain any injury. And I would also point the court to the initial pleadings. It's my recollection that he did not contend any injury at that point either. So, Your Honor, there is a host of evidence that the court can consider at this point, and there would be evidence ultimately at trial that would support that. Your Honor, turning to the second piece of evidence that the plaintiff relies upon, which is Officer Deese's actions after the use-of-force encounter has ended. We discussed it a bit earlier, but I will just again note that this court has said, in the Brooks case specifically when we're looking at those three taser shocks, that a picture can change during the course of a physical event. So in the Brooks case, there was an inmate who was simply noncompliant. He was not violent. He just would not pose for a picture. And the officers tased him three separate times within a span of 70 seconds. And this court said, without ruling on the issues of fact, but said that while a first taser shock may have been done in good faith to ensure compliance with that lawful order, that that picture then changes when we're looking at the second shock and then ultimately the third shock. The same rings true in the instant case, as was hypothetically discussed a bit earlier, that had Officer Deese returned to this plaintiff and used force against him a second time, then it would be at that point that those subsequent actions would be relevant to the court's inquiry today. But because that did not happen, and we're looking again at that very narrow window of time, right before and during the use-of-force event, the defendant contends that those subsequent actions should not be considered and are certainly not material enough to overcome summary judgment at this stage. Turning to my second point, Your Honor, generally, that the district court properly applied the Whitley factors when finding that no reasonable jury could infer subjective intent here. Because the analysis is the subjective intent of this officer, and of course we can't read officers' minds with retrospect, the U.S. Supreme Court has provided these factors in helping us infer what the officer's subjective intent was when he utilized force. Your Honors, we contend that the district court did in fact properly apply these factors in finding that there certainly was a need for the application of force. The relationship between that need and the amount of force that was used was sufficient, where we have about an 8-second skirmish, an 8-second situation that resulted in no injury. The threat to the safety of staff and inmates, as reasonably perceived by this officer, certainly favors the defendant here, where this officer in particular did face a physical threat because this plaintiff attempted to headbutt him in the face after Officer Deese had already utilized a minimus force against him and had retreated out of the cell away from him. And, Your Honors, the final factor certainly also favors the defendant here. Any efforts made to temper the severity of a forceful response, again, the minimus touch he utilizes, the soft touch to his right wrist, the attempt to gain compliance using his handcuffs, and then ultimately Officer Deese's retreat out of the cell when those are not working. Let me ask you a question. So why, and maybe this goes to questions that Judge Agee was asking earlier, when he attempts to headbutt him, why, and he runs back in the cell, why could he not just close the cell door and de-escalate the situation at that point? Because it appears that's ultimately what they ended up having to do. Respectfully, Your Honor, the courts and our use of force policies in these facilities, of course, do allow for force. There is no requirement that an officer immediately disengage when you have an inmate who is repeatedly not compliant with verbal orders, not just of this officer, but also of another officer, and he's posing an immediate threat to the physical safety of officers by attempting to assault them. So there is no requirement that officers disengage when an officer is being a threat to them, or, excuse me, when an inmate is being a threat to them, or when an inmate is refusing to comply. We have use of force for a reason. Of course, this court has analyzed a whole host of factual contentions. That's sort of how it plays out. But, Your Honor, hypothetically, could have Officer Dees retreated out of the cell? Perhaps. But he was permitted in this situation to use force, to try and subdue this inmate who was noncompliant and posing a threat to these officers' safety. So he was permitted to do this, Your Honor. I see that my time is running out. Officer Dees respectfully requests that this court affirm the district court's decision. All right. Thank you very much. Ms. Schreiner, you've got a few minutes in rebuttal. Thank you, Your Honor. To answer your question earlier, Your Honor, what could have Officer Dees done to get him to obey order? I think at this time, after the headbutt, what he could have done is, again, some sort of restraint, some sort of use of force that looks a little more like he was trying to extract Mr. Freeman out of the cell. And, again, punching someone into the corner does not seem to be the best way to achieve that outcome. And at the end of the day, the inquiry is, the question is whether his own explanation for his actions hold water. And besides that, all of the other officers surrounding him could have helped pull Mr. Freeman out of the cell. He was handcuffed. He was shackled. I mean, we may have ideas about what's the best way to handle a situation, but prison administrators have thought about this and dealt with these situations, and they have this handbook that apparently told Dees, in this situation, you can use this particular move, this particular use of force. So, you know, I'm not sure that the argument that it doesn't seem like the best way to handle the situation gets us very far. You're correct, Your Honor, but what I meant here is that his own explanation for his motives does not seem to comport with his actual action. And besides, the handbook only allows for the open palm strike, and only in limited circumstances. In this case, we must look at the facts in light most favorable to Mr. Freeman, and Mr. Freeman's contention is the close fist punch. A second issue I have with the State's argument is that the State said that the time frame of evidence that we must look at is limited to the time of use of force itself, but that's not what this Court held in, as Your Honor mentioned, in Eco, and also in Brooks, where the Court considered the incident report that the officer filed after the use of force incident, in which the officer said that the inmate was being disrespectful, and this Court used that as evidence that the force was not used in good faith. And the third thing is that even though the State contends that Mr. Freeman cannot offer any evidence for the amount of injury, but Mr. Freeman could testify at trial, and could testify as to how many punches that he received, and even though he did not contend that he received physical injury at the medical screening in his initial complaint, the lack of injury is still not this positive as this Court had held. And this is especially, I think, on point here because the inference between the proportionality, between the amount of use, amount of force, and the intent of that force is attenuated because there were other officers there to hold him back. But just because Mr. Freeman was lucky that other officers were there doesn't mean that Officer Deese had used that force in good faith. And even if the force could have been used in good faith, which we contend that it's not, the ultimate inquiry is not whether he could use that force in good faith, it's whether that he did. And the rushing back evidence, the fact that all the other officers were there to decide to hold him back instead of helping him, a colleague, and the fact that at the end of the day Mr. Freeman is the first to disengage and left that distance for Officer Deese to close means that he did not use that force in good faith. All right. Thank you very much. We appreciate your argument. And we'll come down and greet counsel and then move on to our next case.
judges: G. Steven Agee, Allison J. Rushing, DeAndrea Gist Benjamin